# EXHIBIT 1

Doc Code: STAT.DISCLMR
Document Description: Statutory Disclaimers per Manual of Patent Examining Procedure(MPEP) 1490

PTO/SB/43 (11-23)
Approved for use through 11/30/2027. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DISCLAIMER IN A PATENT UNDER 37 CFR 1.321(a)

| Name of Patentee **Netlist, Inc.** | Docket Number (optional) **NL070-14US03** |
|---|---|
| Patent Number **12,308,087** | Date Patent Issued **May 20, 2025** |

Title of Invention **MEMORY PACKAGE HAVING STACKED ARRAY DIES AND REDUCED DRIVER LOAD**

Patentee hereby disclaims:

[✓] the following complete claim(s) in the above-identified patent: 24-28 _____ .

[ ] the terminal part of the term of the above-identified patent beginning on the date: _____ .

[ ] the entire term of the above-identified patent.

The disclaimer is binding on the patentee and its successors or assigns.

The extent of patentee's ownership interest in the above-identified patent is: 100% _____ .

The fee for this disclaimer is set forth in 37 CFR 1.20(d) and is being paid in the following manner:

[ ] payment by the USPTO patent electronic filing system.

[✓] the Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account No. 603916 _____ .

[ ] payment by credit card. Form PTO-2038 is attached.

[ ] a check in the amount of the fee is enclosed.

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on form PTO-2038.

The undersigned is:

[ ] patentee. If patentee is a juristic entity, the undersigned is authorized to act on behalf of the juristic entity.

[✓] attorney or agent of record.

| Signature **/Jamie J. Zheng/** | Date **December 4, 2025** |
|---|---|
| Name (printed/typed) **Jamie J. Zheng** | Practitioner registration number **51167** |

*Note:* See 37 CFR 1.4(d) for signature requirements and certifications.

A Federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with an information collection subject to the requirements of the Paperwork Reduction Act of 1995, unless the information collection has a currently valid OMB Control Number. The OMB Control Number for this information collection is 0651-0031. Public burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information collection. Send comments regarding this burden estimate or any other aspect of this information collection, including suggestions for reducing this burden to the Chief Administrative Officer, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450 or email InformationCollection@uspto.gov. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. If filing the completed form by mail, send to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013), https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf.

Routine uses of the information in this record may include disclosure to: 1) law enforcement, in the event that the system of records indicates a violation or potential violation of law; 2) a federal, state, local, or international agency, in response to its request; 3) a contractor of the USPTO having need for the information in order to perform a contract; 4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record; 5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record; 6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations; 7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals; 8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)); 9) the Office of Personnel Management (OPM) for personnel research purposes; and 10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

# EXHIBIT 2

12/11/2023 5:19 PM
Fourth Judicial District, Ada County
Trent Tripple, Clerk of the Court
By: Katee Hysell, Deputy Clerk

Teague I. Donahey (ISB #9963)
tidonahey@hollandhart.com
Christopher C. McCurdy (ISB #8552)
ccmccurdy@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  208.342.5000
Facsimile:  208.343.8869

Jared Bobrow (*pro hac vice forthcoming*)
jbobrow@orrick.com
Jason Lang (*pro hac vice forthcoming*)
jlang@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:  +1 650.614.7400
Facsimile:  +1 650.614.7401

Attorneys for Plaintiffs Micron Technology, Inc. and
Micron Semiconductor Products, Inc.

# IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

# STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., Delaware corporation; and MICRON SEMICONDUCTOR PRODUCTS, INC., an Idaho corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>NETLIST, INC., a Delaware corporation,<br><br>    Defendant. | Case No. CV01-23-19920<br><br>**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Micron Technology, Inc. and Micron Semiconductor Products, Inc.

(collectively, "Micron"), through their counsel, Holland & Hart LLP and Orrick, Herrington &

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH
ASSERTION OF PATENT INFRINGEMENT) - 1**

Sutcliffe LLP, bring this Complaint against Defendant Netlist, Inc. ("Netlist"), alleging as follows:

## I. INTRODUCTION

1. Micron brings this case under the Idaho Bad Faith Assertions of Patent Infringement Act (Idaho Code, tit. 48, ch. 17) ("the Act"). The Act, promulgated under Idaho's historic police powers, codifies the state's strong public policy against bad-faith assertions of patent infringement. The Act recognizes that "abusive patent litigation, and especially the assertion of bad faith infringement claims, can harm Idaho companies" and "undermine Idaho's efforts to attract and nurture" local technology and knowledge-based companies, which can "harm[] Idaho's economy." Idaho Code § 48-1701(1)(d)-(e). Accordingly, to "protect Idaho businesses" and to "build Idaho's economy," *id.* § 48-1701(2), the Act makes it "unlawful for a person to make a bad faith assertion of patent infringement," *id.* § 48-1703(1), and declares "[a]ny violation" to be "an unlawful, unfair[,] and deceptive act or practice in trade or commerce." *Id.* § 48-1703(4). To further disincentivize such conduct, the Act provides victims with the means to fight back, furnishing them with a private cause of action authorizing the award of equitable relief, compensatory damages, exemplary damages, and costs and fees. *Id.* § 48-1706.

2. Plaintiffs Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively, "Micron") are exactly the type of companies that the Act is designed to protect. Micron is Idaho's most successful technology business and largest for-profit employer. Micron began in 1978 as a four-person semiconductor-design company in the basement of a Boise dental office. Since then, Micron has become a world leader in innovative computer-memory and data-storage solutions, employing more than 6,000 people in Idaho. As Micron has grown into a

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 2**

global semiconductor innovator, Boise has remained its home, serving as the location of Micron's headquarters and principal research and development center. Indeed, Micron recently announced plans to invest approximately $15 billion through the end of the decade to construct a new plant for leading-edge memory manufacturing in Boise. It is estimated that this project will create over 17,000 new jobs. But Micron's success has come with a price: fending off baseless assertions of patent infringement by patent enforcement entities. These patentees attempt to shake down Micron for license fees and, if Micron refuses, they attempt to strong-arm compliance by forcing Micron to spend millions of dollars engaging in necessarily complex and protracted patent litigation.

3.      One such patentee that Micron has had to fend off is Defendant Netlist. Unable to compete with innovators in the marketplace, Netlist's "business" has become bringing patent infringement suits, apparently to drive up litigation costs and pressure the true innovators, such as Micron, to pay what amounts to a business tax, *i.e.*, pay Netlist to settle meritless suits. True to that mission, Netlist targeted Micron alleging infringement of facially invalid patents. Idaho's statute unambiguously characterizes this type of conduct as bad-faith patent assertion.

4.      Netlist's attack began when it filed suit against Micron on the very same day that it sent Micron a demand letter. Exs. 1, 3. Of course, Micron did not receive this disingenuous letter until *after* Netlist had already filed the lawsuit in the U.S. District Court for the Western District of Texas. The lawsuit asserts that Micron infringes claim 15 of U.S. Pat. No. 8,301,833 ("the '833 patent"). Ex. 7. Particularly troubling is the fact that Netlist had to know—as any reasonable person would have known—that claim 15 of the '833 patent was invalid. Notably, before Netlist filed its lawsuit against Micron, the U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") already had invalidated a claim of a related Netlist patent that

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH
ASSERTION OF PATENT INFRINGEMENT) - 3**

is virtually identical to claim 15 of the '833 patent. Put simply, Netlist filed an infringement lawsuit against Micron based on what it knew to be an effectively invalid patent claim. What's more, Netlist misleadingly withheld from Micron key information relevant to the invalidity of the '833 patent. In its demand letter, Netlist trumpeted alleged victories that it had before the PTAB relating to the '833 patent, but conveniently left out the critical fact that the PTAB had already found a virtually identical claim in a related Netlist patent to be invalid.

5. After Micron learned that the PTAB already had effectively found claim 15 of the '833 patent to be invalid, Micron advised Netlist in writing what Netlist certainly already knew: the '833 patent is invalid and Netlist's prosecution of an infringement suit based on an invalid patent constitutes bad faith. Specifically, in responding to Netlist's bad faith infringement suit, Micron filed a counterclaim for a declaration that the '833 patent is invalid. This counterclaim laid out the specific reasons that the '833 patent is invalid, citing the specific invalidating prior art references and the prior PTAB ruling that invalidated a virtually identical Netlist patent claim from a related patent. Micron did not stop there. In subsequent correspondence, Micron repeatedly warned Netlist that its assertion of an invalid patent was in bad faith.

6. Amazingly, in the face of clear and convincing evidence that the '833 patent was invalid, Netlist pressed ahead with its lawsuit. This forced Micron to expend considerable resources defending itself before the district court and proving to the PTAB what Netlist already knew: the '833 patent is invalid. To no one's surprise, following a full IPR proceeding before three Administrative Patent Judges, the PTAB found the '833 patent to be invalid for the exact reasons set forth in Micron's district court counterclaim. Tellingly, Netlist did not even bother to appeal the PTAB's decision.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 4**

7. After being dragged into litigation over the '833 patent, to date, Micron's sole consolation has been that the Patent Office has determined that the '833 patent is invalid. Although Micron is gratified by its successful IPR challenge, it never should have been subjected to Netlist's baseless assertion of infringement over the '833 patent in the first place. That assertion was unjustified both subjectively and objectively. Netlist knew, and any reasonable litigant should have known, that the '833 patent was invalid. Patent law does not supply a license to make such bad-faith assertions, which Idaho's Act renders unlawful under the "well established state power" of "'providing common-law and statutory remedies against monopolies and unfair business practices.'" *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 388 (2015) (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989)).

8. For these reasons and those set forth below, Netlist should be held liable for engaging in unfair business practices in contravention of Idaho law.

## II. PARTIES

9. Plaintiff Micron Technology, Inc. is a Delaware corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716.

10. Plaintiff Micron Semiconductor Products, Inc. is an Idaho corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716.

11. Defendant Netlist is a Delaware corporation having a principal place of business at 175 Technology Drive, Suite 150, Irvine, California 92618. Netlist's principal activities are patent-monetization and patent enforcement.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 5**

## III.   JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action, pursuant to Idaho Const. Art. V, § 20 and Idaho Code § 1-705. The amount in controversy in this action exceeds $10,000, exclusive of interest, costs, and attorney's fees.

13.     This Court has personal jurisdiction over Netlist for the purposes of this action, pursuant to Idaho Code § 48-1704 because, for instance, Netlist sent demand letters (and several similar emails demanding that Micron take a license) to Micron in Idaho.  *E.g.*, Ex. 1; *see also* Idaho Code § 48-1704(1) ("Any person outside this state sending a demand letter to an Idaho person shall be deemed to be transacting business within this state within the meaning of section 5-514(a), Idaho Code, and shall thereby be subject to the jurisdiction of the courts of this state."). Each of the two Micron plaintiffs here is an "Idaho Person" as defined in Idaho Code § 48-602, and each is a "Target" under Idaho Code §§ 48-1702(3)(a)-(b).  In addition, this Court has jurisdiction over Netlist for purposes of this action, pursuant to Idaho Code § 5-514, because Netlist has transacted business in Idaho, as defined in Idaho Code § 5-514(a), *e.g.*, by advertising its sales support in Idaho. *See* https://netlist.com/us-international/.

14.     Venue is proper in this Court pursuant to Idaho Code § 5-404 because Netlist does not reside in Idaho, and Micron designates this Court as the proper county in this Complaint.

## IV.   FACTUAL ALLEGATIONS

### A.   Idaho's Bad Faith Assertions Of Patent Infringement Act

15.     Idaho's legislature passed Idaho's Bad Faith Assertions of Patent Infringement Act to help protect Idaho's creators, consumers, and marketplace from abusive patent-assertion tactics.  As the Act explains, "Idaho is striving to build an entrepreneurial and knowledge-based economy.  Attracting and nurturing information technology (IT) and other knowledge-based

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 6**

companies are important parts of this effort and will be beneficial to Idaho's future."  Idaho Code § 48-1701(1)(a).  Bad-faith assertions of patent infringement hinder these goals.  *Id.* § 48-1701(1)(d)-(e).  "A business that receives a letter or other communication asserting such claims faces the threat of expensive and protracted litigation and may feel that it has no choice but to settle and to pay a licensing fee, even if the claim is meritless," "harm[ing] Idaho companies." *Id.* § 48-1701(1)(d).  And "[f]unds used to avoid the threat of bad faith litigation are no longer available to invest, produce new products, expand[,] or hire new workers, thereby harming Idaho's economy" as well.  *Id.* § 48-1701(1)(e).

16.      To prevent these harms and to promote the public good, the Act, like similar legislation in over thirty other states, forbids bad-faith assertions of patent infringement as a matter of state unfair-competition law, Idaho Code § 48-1703(1), (4), a "traditional[]" and "well established" area of state authority within the scope of "the historic police powers of the States." *ARC Am.*, 490 U.S. at 101 (internal quotation marks omitted); *Oneok,* 575 U.S. at 388 (same). Under this authority, states may "make reasonable regulations … calculated to protect [their] citizens" from "evil," regardless of whether those regulations touch upon patent rights.  *Allen v. Riley*, 203 U.S. 347, 355-58 (1906) (state statute requiring proof of patent ownership in certain transactions permissible).  As such, although "state unfair competition claims" may depend on "substantial question[s] of federal patent law," "state unfair competition law" legitimately "regulates conduct in a different field from federal patent law."  *Hunter Douglas Inc. v. Harmonic Design*, 153 F.3d 1318, 1333-34 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (en banc in relevant part); *see Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989) ("[T]he law of unfair competition … ha[s] coexisted harmoniously with federal patent protection

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 7**

for almost 200 years."); *Mars v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994) ("Unfair competition law and patent law have long existed as distinct and independent bodies of law, each with different origins and each protecting different rights.").

17.    The Act is wholly consistent with federal patent law, taking care to respect the boundaries of the federal patent system. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974); *accord Hunter Douglas*, 153 F.3d at 1334-35 ("The only limitation on the States … in regulating the area of patents" is that state legislation "not conflict with the operation of the laws in this area passed by Congress."  The Act acknowledges that "[p]atents are essential to encouraging innovation"; that "the protections afforded by the federal patent system create an incentive to invest in research and innovation"; and that "[p]atent holders have every right to enforce their patents when they are valid and infringed, to solicit interest from prospective licensees[,] and to initiate patent enforcement litigation as necessary to protect intellectual property." Idaho Code § 48-1701(1)(b).  The Act likewise emphasizes that it is not intended to "interfere with the good faith enforcement of patents or good faith patent litigation." *Id.* § 48-1701(c).  Rather, the Act is "narrowly focused," seeking to "facilitate the efficient and prompt resolution of patent infringement claims, protect Idaho businesses from abusive and bad faith assertions of patent infringement[,] and build Idaho's economy" without impinging upon "legitimate patent enforcement actions." *Id.* § 48-1701(2).  In accord, the Act makes unlawful only "bad faith assertion[s] of patent infringement," *id.* § 48-1703(1), setting forth a set of nonexclusive factors that go to both objective and subjective reasonableness to inform whether a patentee's conduct crosses the line, *id.* § 48-1703(2)-(3).

18.    In non-exclusive fashion, the Act provides factors that "[a] court may consider … as evidence that a person *has* made a bad faith assertion of patent infringement," which include:

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 8**

(f)  The person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless.

(g)  The claim or assertion of patent infringement is deceptive.

(h)  The person or its subsidiaries or affiliates have previously filed or threatened to file one (1) or more lawsuits alleging patent infringement based on the same or similar claim, the person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless.

Idaho Code § 48-1703(2) (emphasis added).

19.     Because the Act creates liability only for bad-faith assertions of patent infringement, the Act, like "the law of unfair competition" generally, "coexists harmoniously with federal patent protection." *Bonito Boats*, 489 U.S. at 166.  Patent law does not countenance assertions made in bad faith, which leaves the door open for states to outlaw such conduct under their "authority to protect businesses and regulate unfair competition." *Katana Silicon Techs. LLC v. Micron Tech., Inc.*, No. 1:22-CV-00273-DCN, 2023 WL 3231201, at *4 (D. Idaho May 3, 2023); *see, e.g.*, *Hunter Douglas*, 153 F.3d at 1336-37 (permitting liability for "state law torts" premised on "bad faith enforcement of a patent").

20.     The U.S. District Court for the District of Idaho has held that "the Act is not preempted by federal law," explaining that the former "plays in close harmony with" and "strikes a similar balance" as the latter, as both "have the end goal of protecting valid patents" and patent assertions "without enabling bad-faith or vexatious litigation." *Katana*, 2023 WL 3231201, at *5, 7, 12; *cf. id.* at *8 (noting that "courts asked to review … state acts" parallel to the one here "have upheld their constitutionality" (collecting cases)).  For example, the Patent Act disapproves of baseless assertions in its fee-shifting provision, 35 U.S.C. § 285, which permits fee awards in cases "presenting either subjective bad faith or exceptionally meritless claims."

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 9**

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014). Idaho's Act "has the same essential purpose[]" in creating further consequences for patentees when they wrongly pursue claims. *Katana*, 2023 WL 3231201, at *7; *cf. Bonito Boats*, 489 U.S. at 166 (approving unfair-competition law in part because "Congress has … given federal recognition to many of the concerns that underlie the state tort of unfair competition"). And the creation of additional consequences is Idaho's prerogative. *Katana*, 2023 WL 3231201, at *8. "'Ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law.'" *English v. Gen. Elec. Co.*, 496 U.S. 72, 89 (1990) (quoting *Arc America*, 490 U.S. at 105).

### B.    Netlist's Bad-Faith Assertions Against Micron

21.    On April 28, 2021, Netlist sent Micron a demand letter that identifies the '833 patent and alleges that Micron's NVDIMM's "infringe on one or more claims" of the '833 patent." Ex. 1 at 3. The demand letter trumpets Netlist's alleged success before the PTAB in defending against challenges to the '833 patent. *See id.* at 1. The demand letter, however, fails to reference the IPR2017-00692 proceeding before the PTAB. *Id.*; *see also* Ex. 2 (the Final Written Decision in IPR2017-00692).

22.    On the very same day that Netlist sent the demand letter, but before Micron received it, Netlist filed a complaint for infringement of the '833 patent in the Western District of Texas ("the lawsuit"). *See* Ex. 3. Netlist asserted that Micron infringed claim 15 of the '833 patent. *Id.* at 8. This strong-arm tactic was a blatant attempt to evoke the prospect of "expensive and protracted litigation" and to make Micron "feel that it ha[d] no choice but to settle and pay a licensing fee, even if the claim was meritless." Idaho Code § 48-1701(d).

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 10**

23.     Well before April 28, 2021, Netlist was a party to the IPR2017-00692 proceeding. In that proceeding, the validity of Netlist's U.S. Pat. No. 8,874,831 ("the '831 patent") was at issue.  Ex. 8.  The '833 patent, which Netlist asserted in the lawsuit against Micron, and the '831 patent are related patents (the '831 patent is a continuation-in-part of the '833 patent).  On July 5, 2018, following an administrative trial before three Administrative Patent Judges, the PTAB invalidated all claims of the '831 patent in the IPR2017-00692 proceeding.  Specifically, the PTAB found claim 15 of the '831 patent to be invalid over the combination of three prior art references: U.S. Pat. Publ. No. 2010/0110748 ("Best"), U.S. Pat. No. 6,026,465 ("Mills"), and U.S. Pat. Publ. No. 2007/0136523 ("Bonella").  Netlist did not appeal the PTAB's decision invalidating all claims of the '831 patent.

24.     Invalid claim 15 of the '831 patent is virtually identical to asserted claim 15 of the '833 patent:

| Invalid Claim 15 of the '831 Patent | Claim 15 of the '833 Patent |
|---|---|
| 15. The method of claim 7[1], further comprising: | 15. A memory system operatively coupled to a host system, the memory system comprising: |
| operating the volatile memory subsystem at a first clock frequency when the memory module is in a first mode of operation in which data is communicated between the volatile memory subsystem and the memory controller; | a volatile memory subsystem operable at a first clock frequency when the memory system is in a first mode of operation in which data is communicated between the volatile memory subsystem and the host system; and |

---

[1] Because claim 15 of the '831 patent incorporates additional limitations of claim 7, claim 15 of the '831 patent is actually narrower in scope than claim 15 of the '833 patent.  Thus, there was never any doubt that the broader claim 15 of the '833 patent was invalid.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 11**

| Invalid Claim 15 of the '831 Patent | Claim 15 of the '833 Patent |
|---|---|
| operating the non-volatile memory subsystem at a second clock frequency when the memory module is in a second mode of operation in which data is communicated between the volatile memory subsystem and the non-volatile memory subsystem; and | a non-volatile memory subsystem operable at a second clock frequency when the memory system is in a second mode of operation in which data is communicated between the volatile memory subsystem and the non-volatile memory subsystem, |
| operating the volatile memory subsystem at a third clock frequency when the memory module is in the second mode of operation, the third clock frequency being less than the first clock frequency. | the volatile memory subsystem further being operable at a third clock frequency when the memory system is in the second mode of operation, the third clock frequency being less than the clock first frequency. |

25.     As of July 5, 2018, Netlist—and any reasonable person—knew that the '833 patent was invalid given the grounds for invalidity of the '831 patent in the IPR2017-00692 proceeding.  The '833 patent was effectively an invalid patent when Netlist asserted it against Micron on April 28, 2021.

26.     On July 28, 2021, after Netlist asserted the '833 patent against Micron, Micron informed Netlist by letter that the '833 patent was invalid in view of the IPR2017-00692 proceeding, that the lawsuit should never have been brought in the first place, and that Micron would seek all available recourse unless Netlist dismissed the lawsuit.  Micron put Netlist on notice that it "does not tolerate baseless infringement claims, attempts to extort damages with the threat of protracted litigation, or claims that appear to be brought for an improper purpose."

27.     On August 20, 2021, Micron responded to Netlist's district court Complaint, counterclaiming that the '833 patent was invalid in view of the IPR2017-00692 proceeding and specifically in view of the combination of the Best, Mills, and Bonella prior art references that were at issue in the IPR2017-00692 proceeding.  Ex. 4 at 15-16.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 12**

28.     On September 10, 2021, Micron again demanded by letter that Netlist dismiss the lawsuit in view of the IPR2017-00692 proceeding.

29.     Netlist did not dismiss the lawsuit.

30.     On January 14, 2022, Micron initiated an IPR proceeding before the PTAB to invalidate the '833 patent, namely, IPR2022-00418.  As grounds for invalidating the '833 patent, Micron relied on the same prior art about which it notified Netlist shortly after Netlist filed the lawsuit against Micron and which was the basis for the successful IPR challenge against the '831 patent: Best, Mills, and Bonella.

31.     On May 11, 2022, after Micron brought to the Court's attention that Netlist was effectively asserting an invalid patent in the lawsuit, the Court stayed the lawsuit.  The Court did so in the face of Netlist's opposition to the stay.  Until the stay was granted, Micron had been forced to litigate in district court for over a year and expend valuable resources defending against the frivolous claim.

32.     On September 1, 2022, the PTAB instituted a trial over whether the '833 patent is invalid.  Ex. 5 (Institution Decision in IPR2022-00418).  In its institution decision, the PTAB noted that claims of the invalid '831 patent and the '833 patent were "facially similar" and "appear quite similar."  *Id.* at 15, 23.

33.     On August 28, 2023, following an administrative trial in IPR2022-00418, the PTAB found all asserted claims of the '833 patent to be invalid.  Ex. 6.  The PTAB based the decision on the same prior art about which Micron had notified Netlist shortly after Netlist filed the lawsuit against Micron and which formed the basis for the nearly identical '831 patent claims being found invalid: Best, Mills, and Bonella.  Ex. 6 at 51.  Netlist did not simply lose the IPR proceeding; it lost it badly.  And that was no surprise, because the IPR invalidity trial involved

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 13**

claims that the PTAB effectively had already found to be invalid in IPR2017-00692.  By way of examples, the PTAB (1) found Netlist's attempts to misconstrue the claims to be "unavailing" (Ex. 5 at 14, 21), (2) rejected Netlist's attempts to apply the law incorrectly (*id.* at 15), and (3) found Netlist's contentions "not supported by the '833 patent" (*id.*).  Indeed, the PTAB found certain of Netlist's assertions to be "disingenuous." *Id.* at 17, 21.

34.     Netlist once again did not bother to appeal the PTAB's decision in IPR2022-00418 that invalidated all asserted claims of the '833 patent.  Micron was forced to litigate in the IPR2022-00418 proceeding for roughly 17 months and was forced to expend valuable resources defending against Netlist's frivolous claim.

35.     The lawsuit against Micron has been proven to be meritless and has harmed Micron in Idaho.  Specifically, Netlist baselessly asserted infringement of the '833 patent.  Netlist played litigation hardball to compensate for the underlying weakness of its assertion, aggressively litigating its case while failing to substantiate it.  For instance, while Netlist knew—as any reasonable person would—that the '833 patent was invalid, Netlist opposed a stay pending IPR proceedings and forced Micron to spend significant resources on invalidity contentions, claim construction, and a stay motion.  Meanwhile, Netlist directly interfered with Micron's business in Idaho.  For example, Netlist sent demand letters and emails to Micron in Idaho in attempts to extort money from Micron, requested numerous meetings, and filed an infringement suit over an invalid patent.  All of this required Micron to invest resources in preparing defenses—distracting Micron engineers from the innovative activities that make Micron a leading Idaho employer.  This further required Micron to expend considerable resources to invalidate the '833 patent in a 17-month administrative trial that would have been entirely unnecessary had Netlist been acting in good faith.  To date, despite the fact that the

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 14**

PTAB invalidated claim 15 of the '833 patent, Netlist has not even taken steps to dismiss its patent infringement lawsuit against Micron expressly premised on that very claim.

## CLAIM FOR RELIEF

### Bad-Faith Assertions Of Patent Infringement
### (Idaho Code §§ 48-1701 *et seq.*)

36.    Micron incorporates by reference and re-alleges every allegation contained in the preceding paragraphs as though fully set forth herein.

37.    Idaho's Act makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint[,] or any other communication," Idaho Code § 48-1703(1), and allows a target of such bad faith conduct to "bring an action in district court" to seek relief, *id.* § 48-1706(1).  "Each bad faith assertion of patent infringement constitutes a separate violation," *id.* § 48-1706(3), including escalations made with regard to an assertion made previously, *see Katana*, 2023 WL 3231201, at *10 ("[I]n commencing patent litigation against a target, a person may commit a separate violation at each step or escalation of the process, rather than committing one extended violation that begins with the demand letter … no matter what escalatory tactics are employed in between.").

38.    Starting with its 2021 demand letter and lawsuit, and continuing through its various litigation actions which culminated in the invalidation of the asserted claims of the '833 patent, Netlist baselessly asserted the '833 patent against Micron in the lawsuit.  From firing off a demand letter and filing suit on the same day, to ignoring (and misleadingly omitting from its demand letter) the prior IPR2017-00692 proceeding that rendered the '833 patent effectively invalid, Netlist's course of conduct smacked of bad faith.  Direct and circumstantial evidence

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 15**

shows that Netlist knew and should have known that its assertion of patent infringement against Micron was unreasonable.

39.     For example, an important factor under the Act is that "[t]he person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless." Idaho Code § 48-1703(2)(f).  Here, Netlist was acting in subjective bad faith—and there can be no doubt that "a reasonable actor in [Netlist's] position would know or reasonably should know that [the lawsuit] is meritless"—because the PTAB had already found virtually identical claims to those in the '833 patent to be invalid.

40.     By way of another example, another important factor under the Act is that "[t]he claim or assertion of patent infringement is deceptive."  *Id.* At § 48-1703(2)(g).  Here, Netlist's claim is deceptive because Netlist's demand letter touts the strength of the '833 patent based on Netlist "prevail[ing]" in prior PTAB proceedings but misleadingly omits to mention that virtually identical claims in a related Netlist patent were held invalid in PTAB proceeding IPR2017-00692.

41.     By way of a final example, another instructive factor under the Act is that "[t]he person or its subsidiaries or affiliates have previously filed or threatened to file one (1) or more lawsuits alleging patent infringement based on the same or similar claim, the person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless."  *Id.* At § 48-1703(2)(h).  Here, virtually identical claims were subject to a prior litigation (the IPR2017-00692 proceeding) and the PTAB found those claims to be meritless.

42.     This pattern of bad-faith conduct persisted in the lawsuit.  At every turn, Netlist failed to "engage[] in a good faith."  *Id.* § 48-1703(3)(a).  Netlist refused to dismiss the lawsuit

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 16**

when Micron learned of the IPR2017-00692 proceeding, a proceeding that Netlist concealed from Micron in its deceptive demand letter.  Netlist refused to agree to a stay of the lawsuit pending IPR proceedings to reduce the costly burden on Micron.  At bottom, the outcome of the IPR2022-00418 proceeding unambiguously demonstrates that Netlist's assertion was completely lacking in merit, as Micron successfully invalidated the asserted claims with ease.

43.     The bad faith assertion of the '833 patent violates Idaho's Act, and Micron is entitled to declaratory and monetary relief as a result.

## V.     ATTORNEYS' FEES

44.     As a result of the conduct by Netlist as enumerated herein, Micron has been required to retain the services of counsel to assist Micron in pursuing the prosecution of its Complaint against Netlist.  Micron is entitled to recover its attorneys' fees in the pursuit of this litigation pursuant to Idaho Code § 48-1706(1)(c), Idaho Rule of Civil Procedure 54, and such further and additional provisions of the Idaho Rules of Civil Procedure and Idaho Code that may be applicable.  A reasonable attorneys' fee in the event judgment is entered against Netlist after the entry of default is $40,000.00 and an additional amount if this Complaint is answered or otherwise defended.

## VI.     REQUEST FOR A JURY TRIAL

45.     Micron requests a jury trial of all issues in this action that are so triable.

## VII.     PRAYER FOR RELIEF

Micron respectfully requests that this Court grant the following relief:

(a)     A declaration that Netlist has made a bad-faith assertion of patent infringement against Micron in violation of Idaho Code § 48-1703 and thus engaged in an

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 17**

unlawful, unfair, and deceptive act or practice in trade or commerce under the Idaho Consumer Protection Act.

(b)    An award of damages, both compensatory and exemplary, pursuant to Idaho Code § 48-1706(b) and (d) and any other applicable authority.

(c)    An award of costs and fees, including reasonable attorney fees associated with this litigation, pursuant to Idaho Code § 48-1706(c), Idaho Rule of Civil Procedure 54, and any other applicable authority.

(d)    Any other relief that the Court deems just and proper.

DATED:  December 11, 2023

HOLLAND & HART LLP

By:/s/ Teague I. Donahey
Teague I. Donahey
Christopher C. McCurdy

Jared Bobrow, (*pro hac vice forthcoming*)
Jason Lang, (*pro hac vice forthcoming*)
ORRICK, HERRINGTON & SUTCLIFFE LLP

Attorneys for Plaintiffs Micron Technology, Inc., and Micron Semiconductor, Inc.

31055118_v1

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 18**

# EXHIBIT 3

1/16/2024 3:06 PM
Fourth Judicial District, Ada County
Trent Tripple, Clerk of the Court
By: Brenna Lawson, Deputy Clerk

Teague I. Donahey (ISB #9963)
tidonahey@hollandhart.com
Christopher C. McCurdy (ISB #8552)
ccmccurdy@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  208.342.5000
Facsimile:  208.343.8869

Jared Bobrow (*pro hac vice forthcoming*)
jbobrow@orrick.com
Jason Lang (*pro hac vice forthcoming*)
jlang@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:  +1 650.614.7400
Facsimile:  +1 650.614.7401

Attorneys for Plaintiffs Micron Technology, Inc. and
Micron Semiconductor Products, Inc.

**IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE**

**STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA**

| | |
|---|---|
| MICRON TECHNOLOGY, INC., a Delaware corporation; and MICRON SEMICONDUCTOR PRODUCTS, INC., an Idaho corporation,<br><br>      Plaintiffs,<br><br>vs.<br><br>NETLIST, INC., a Delaware corporation,<br><br>      Defendant. | Case No. CV01-24-01032<br><br>**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT)**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 1**

Plaintiffs, Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively, "Micron"), through their counsel, Holland & Hart LLP and Orrick, Herrington & Sutcliffe LLP, bring this Complaint against Defendant Netlist, Inc. ("Netlist"), alleging as follows:

## I.     INTRODUCTION

1.     Micron brings this case under the Idaho Bad Faith Assertions of Patent Infringement Act (Idaho Code, tit. 48, ch. 17) ("the Act").  The Act, promulgated under Idaho's historic police powers, codifies the state's strong public policy against bad-faith assertions of patent infringement.  The Act recognizes that "abusive patent litigation, and especially the assertion of bad faith infringement claims, can harm Idaho companies" and "undermine Idaho's efforts to attract and nurture" local technology and knowledge-based companies, which can "harm[] Idaho's economy."  Idaho Code § 48-1701(1)(d)-(e).  Accordingly, to "protect Idaho businesses" and to "build Idaho's economy," *id.* § 48-1701(2), the Act makes it "unlawful for a person to make a bad faith assertion of patent infringement," *id.* § 48-1703(1), and declares "[a]ny violation" to be "an unlawful, unfair[,] and deceptive act or practice in trade or commerce." *Id.* § 48-1703(4).  To further disincentivize such conduct, the Act provides victims with the means to fight back, furnishing them with a private cause of action authorizing the award of equitable relief, compensatory damages, exemplary damages, and costs and fees. *Id.* § 48-1706.

2.     Plaintiffs Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively, "Micron") are exactly the type of companies that the Act is designed to protect. Micron is Idaho's most successful technology business and largest for-profit employer.  Micron

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 2**

began in 1978 as a four-person semiconductor-design company in the basement of a Boise dental office. Since then, Micron has become a world leader in innovative computer-memory and data-storage solutions, employing more than 6,000 people in Idaho. As Micron has grown into a global semiconductor innovator, Boise has remained its home, serving as the location of Micron's headquarters and principal research and development center. Indeed, Micron recently announced plans to invest approximately $15 billion through the end of the decade to construct a new plant for leading-edge memory manufacturing in Boise. It is estimated that this project will create over 17,000 new jobs. But Micron's success has come with a price: fending off baseless assertions of patent infringement by patent enforcement entities. These patentees attempt to shake down Micron for license fees and, if Micron refuses, they attempt to strong-arm compliance by forcing Micron to spend millions of dollars engaging in necessarily complex and protracted patent litigation.

3.	One such patentee that Micron has had to fend off is Defendant Netlist. Unable to compete with innovators in the marketplace, Netlist's "business" has become bringing patent infringement suits, apparently to drive up litigation costs and pressure the true innovators, such as Micron, to pay what amounts to a business tax, *i.e.*, pay Netlist to settle meritless suits. True to that mission, Netlist targeted Micron by alleging infringement of facially invalid patents. Idaho's statute unambiguously characterizes this type of conduct as bad-faith patent assertion.

4.	One of Netlist's attacks began on June 10, 2022, when it filed suit against Micron in the United States District Court Eastern District of Texas. Ex. 1. That suit alleged infringement of multiple patents, including U.S. Patent Nos. 11,232,054 and 11,016,918. *Id.* ¶¶ 92-109. Netlist sued Micron on the '054 and '918 patents even though another company had

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 3**

previously filed detailed and persuasive petitions at the Patent Trial and Appeal Board challenging the validity of those patents.  Exs. 2 ('054 Petition), 3 ('918 Petition).  After the PTAB instituted IPR proceedings on those patents, Micron asked Netlist in May 2023 to stay the district court case pending final written decisions at the PTAB, but Netlist refused.  Then, in December 2023, the PTAB, as expected from the outset, issued Final Written Decisions that all claims of the '054 and '918 patents are obvious on multiple grounds and therefore unpatentable under 35 U.S.C. § 103.  Exs. 4 ('054 FWD), 5 ('918 FWD).  Despite these overwhelmingly adverse decisions, Netlist rejected Micron's renewed request that Netlist drop these two patents from its district court case, or at least stay proceedings on these two patents.  Netlist refused to do so even though it acknowledged to the court in the Eastern District case that the odds of getting the PTAB decisions overturned on appeal are very low.  Instead, Netlist insisted on going to trial on these invalid patents in district court, thereby forcing Micron to waste management time and resources and incur attorneys' fees and costs to defend against these baseless patent claims in district court.

5.      Netlist's conduct is unjustified, both subjectively and objectively.  Netlist knew, and any reasonable litigant should have known, that the '054 and '918 patents were invalid.  Patent law does not supply a license to make such bad-faith assertions, which the Act renders unlawful under the "well established state power" of "'providing common-law and statutory remedies against monopolies and unfair business practices.'"  *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 388 (2015) (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989)).

6.      For these reasons and those set forth below, Netlist should be held liable for engaging in unfair business practices in contravention of Idaho law.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 4**

## II.   PARTIES

7.      Plaintiff Micron Technology, Inc. is a Delaware corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716.

8.      Plaintiff Micron Semiconductor Products, Inc. is an Idaho corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716.

9.      Defendant Netlist is a Delaware corporation having a principal place of business at 175 Technology Drive, Suite 150, Irvine, California 92618.  Netlist's principal activities are patent-monetization and patent enforcement.

## III.   JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action, pursuant to Idaho Const. Art. V, § 20 and Idaho Code § 1-705. The amount in controversy in this action exceeds $10,000, exclusive of interest, costs, and attorney's fees.

11.     This Court has personal jurisdiction over Netlist for the purposes of this action, pursuant to Idaho Code § 48-1704 because, for instance, Netlist's representatives, over the course of several weeks, conducted inspections of Micron layout documents in Boise, Idaho for purposes of asserting the invalid '504 and '918 patents against Micron; took the deposition in Idaho of a Micron employee who resides in Idaho for purposes of  asserting the invalid '504 and '918 patents against Micron; and sent a letter to Micron in Idaho demanding payment for selling products that allegedly infringe these invalid patents.  Idaho Code § 48-1704(1) ("Any person outside this state sending a demand letter to an Idaho person shall be deemed to be transacting business within this state within the meaning of section 5-514(a), Idaho Code, and shall thereby be subject to the jurisdiction of the courts of this state."). Each of the two Micron plaintiffs here

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 5**

is an "Idaho Person" as defined in Idaho Code § 48-602, and each is a "Target" under Idaho

Code §§ 48-1702(3)(a)-(b).  In addition, this Court has jurisdiction over Netlist for purposes of

this action, pursuant to Idaho Code § 5-514, because Netlist has transacted business in Idaho, as

defined in Idaho Code § 5-514(a), *e.g.*, by advertising its sales support in Idaho. *See*

https://netlist.com/us-international/.

12.    Venue is proper in this Court pursuant to Idaho Code § 5-404 because Netlist

does not reside in Idaho, and Micron designates this Court as the proper county in this

Complaint.

## IV.    FACTUAL ALLEGATIONS

### A.    Idaho's Bad Faith Assertions Of Patent Infringement Act

13.    Idaho's legislature passed Idaho's Bad Faith Assertions of Patent Infringement

Act to help protect Idaho's creators, consumers, and marketplace from abusive patent-assertion

tactics.  As the Act explains, "Idaho is striving to build an entrepreneurial and knowledge-based

economy.  Attracting and nurturing information technology (IT) and other knowledge-based

companies are important parts of this effort and will be beneficial to Idaho's future."  Idaho Code

§ 48-1701(1)(a).  Bad-faith assertions of patent infringement hinder these goals.  *Id.* § 48-

1701(1)(d)-(e).  "A business that receives a letter or other communication asserting such claims

faces the threat of expensive and protracted litigation and may feel that it has no choice but to

settle and to pay a licensing fee, even if the claim is meritless," "harm[ing] Idaho companies."

*Id.* § 48-1701(1)(d).  And "[f]unds used to avoid the threat of bad faith litigation are no longer

available to invest, produce new products, expand[,] or hire new workers, thereby harming

Idaho's economy" as well.  *Id.* § 48-1701(1)(e).

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH
ASSERTION OF PATENT INFRINGEMENT) - 6**

14.     To prevent these harms and to promote the public good, the Act, like similar legislation in over thirty other states, forbids bad-faith assertions of patent infringement as a matter of state unfair-competition law, Idaho Code § 48-1703(1), (4), a "traditional[]" and "well established" area of state authority within the scope of "the historic police powers of the States." *ARC Am.*, 490 U.S. at 101 (internal quotation marks omitted); *Oneok,* 575 U.S. at 388 (same). Under this authority, states may "make reasonable regulations … calculated to protect [their] citizens" from "evil," regardless of whether those regulations touch upon patent rights. *Allen v. Riley*, 203 U.S. 347, 355-58 (1906) (state statute requiring proof of patent ownership in certain transactions permissible). As such, although "state unfair competition claims" may depend on "substantial question[s] of federal patent law," "state unfair competition law" legitimately "regulates conduct in a different field from federal patent law." *Hunter Douglas Inc. v. Harmonic Design*, 153 F.3d 1318, 1333-34 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (en banc in relevant part); *see Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989) ("[T]he law of unfair competition … ha[s] coexisted harmoniously with federal patent protection for almost 200 years."); *Mars v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994) ("Unfair competition law and patent law have long existed as distinct and independent bodies of law, each with different origins and each protecting different rights.").

15.     The Act is wholly consistent with federal patent law, taking care to respect the boundaries of the federal patent system. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974); *accord Hunter Douglas*, 153 F.3d at 1334-35 ("The only limitation on the States … in regulating the area of patents" is that state legislation "not conflict with the operation of the laws

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 7**

in this area passed by Congress."). The Act acknowledges that "[p]atents are essential to encouraging innovation"; that "the protections afforded by the federal patent system create an incentive to invest in research and innovation"; and that "[p]atent holders have every right to enforce their patents when they are valid and infringed, to solicit interest from prospective licensees[,] and to initiate patent enforcement litigation as necessary to protect intellectual property." Idaho Code § 48-1701(1)(b). The Act likewise emphasizes that it is not intended to "interfere with the good faith enforcement of patents or good faith patent litigation." *Id.* § 48-1701(c). Rather, the Act is "narrowly focused," seeking to "facilitate the efficient and prompt resolution of patent infringement claims, protect Idaho businesses from abusive and bad faith assertions of patent infringement[,] and build Idaho's economy" without impinging upon "legitimate patent enforcement actions." *Id.* § 48-1701(2). In accord, the Act makes unlawful only "bad faith assertion[s] of patent infringement," *id.* § 48-1703(1), setting forth a set of nonexclusive factors that go to both objective and subjective reasonableness to inform whether a patentee's conduct crosses the line, *id.* § 48-1703(2)-(3).

16.     In non-exclusive fashion, the Act provides factors that "[a] court may consider … as evidence that a person *has* made a bad faith assertion of patent infringement," which include:

> (f) The person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless.

> (h) The person or its subsidiaries or affiliates have previously filed or threatened to file one (1) or more lawsuits alleging patent infringement based on the same or similar claim, the person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless.

Idaho Code § 48-1703(2) (emphasis added).

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 8**

17.     Because the Act creates liability only for bad-faith assertions of patent infringement, the Act, like "the law of unfair competition" generally, "coexists harmoniously with federal patent protection." *Bonito Boats*, 489 U.S. at 166.  Patent law does not countenance assertions made in bad faith, which leaves the door open for states to outlaw such conduct under their "authority to protect businesses and regulate unfair competition." *Katana Silicon Techs. LLC v. Micron Tech., Inc.*, No. 1:22-CV-00273-DCN, 2023 WL 3231201, at *4 (D. Idaho May 3, 2023); *see, e.g.*, *Hunter Douglas*, 153 F.3d at 1336-37 (permitting liability for "state law torts" premised on "bad faith enforcement of a patent").

18.     The U.S. District Court for the District of Idaho has held that "the Act is not preempted by federal law," explaining that the former "plays in close harmony with" and "strikes a similar balance" as the latter, as both "have the end goal of protecting valid patents" and patent assertions "without enabling bad-faith or vexatious litigation." *Katana*, 2023 WL 3231201, at *5, 7, 12; *cf. id.* at *8 (noting that "courts asked to review … state acts" parallel to the one here "have upheld their constitutionality" (collecting cases)).  For example, the Patent Act disapproves of baseless assertions in its fee-shifting provision, 35 U.S.C. § 285, which permits fee awards in cases "presenting either subjective bad faith or exceptionally meritless claims." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014).  Idaho's Act "has the same essential purpose[]" in creating further consequences for patentees when they wrongly pursue claims.  *Katana*, 2023 WL 3231201, at *7; *cf. Bonito Boats*, 489 U.S. at 166 (approving unfair-competition law in part because "Congress has … given federal recognition to many of the concerns that underlie the state tort of unfair competition").  And the creation of additional consequences is Idaho's prerogative.  *Katana*, 2023 WL 3231201, at *8.  "'Ordinarily,

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 9**

state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law.'" *English v. Gen. Elec. Co.*, 496 U.S. 72, 89 (1990) (quoting *Arc America*, 490 U.S. at 105).

### B.    Netlist's Bad-Faith Assertions Against Micron

19.    On June 10, 2022, Netlist filed a complaint against Micron in the U.S. District Court for the Eastern District of Texas. Ex. 1. Netlist alleged, among other things, that Micron infringed the '054 and '918 patents. Ex. 1 ¶¶ 92-109.

20.    That Netlist asserted the '054 and '918 patents at all is surprising because a month before it filed its complaint, Netlist received extensive documentation showing clearly and persuasively that those two patents are invalid as obvious under 35 U.S.C. § 103. Specifically, on May 17, 2022, Samsung Electronics Co., Ltd. ("Samsung") filed petitions at the PTAB challenging the validity of all claims of the '054 and '918 patents. The petitions, which were supported with expert testimony and extensive prior art, demonstrated that the claims of those patents were obvious under 35 U.S.C. § 103 on multiple grounds. Exs. 2 ('054 Petition), 3 ('918 Petition). Each petition described five relevant prior art references and set forth five different grounds that rendered the challenged claims unpatentable. Ex. 2 at 3, 9-14; Ex. 3 at 3, 10-14. Ignoring this detailed evidence of invalidity, Netlist forged ahead and filed suit against Micron. Even at this early stage, given the strength of these IPR petitions, Netlist knew, or certainly should have known, that the '054 and '918 patents were invalid.

21.    It came as no surprise that the PTAB instituted IPR proceedings on these petitions on December 6 and 7, 2022. Exs. 6 ('054 ID), 7 ('918 ID). The institution decisions rejected Netlist's Preliminary Response and found that the petitioner had established "a

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 10**

reasonable likelihood" that the petitioner would prevail in showing unpatentability of at least one challenged claim.  Ex. 6 at 2, 54; Ex. 7 at 2, 54-55.

22.     After institution, Micron asked Netlist on or about May 19, 2023 to stay the district court case pending the outcome of the IPR proceedings.  Netlist refused this request, insisting that the parties proceed with the litigation on these dubious patents.  As a result of Netlist's refusal, Micron was forced to proceed with costly and time-intensive patent litigation in district court.  That litigation entailed costly fact discovery, motion practice, depositions, claim construction proceedings, and expert discovery.

23.     On December 5 and 7, 2023, as expected, the PTAB issued Final Written Decisions invalidating the '054 and '918 patents.  Exs. 4 ('054 FWD), 5 ('918 FWD).  Those decisions found that each claim of the '054 and '918 patents was obvious, and thus unpatentable, on at least two (and sometimes three) different grounds.  Exs. 4, 5.  Specifically, for the '054 patent, the PTAB concluded that claims 1-3 and 15 were unpatentable as obvious over U.S. Patent Pub. No. 2006/0174140 A1 to Harris ("Harris") and JESD82-20 and JESD205 standards ("FBDIMM Standards); that claims 1-30 were unpatentable as obvious over Harris, FBDIMM Standards, and U.S. Patent No. 7,724,604 B2 to Amidi ("Amidi"); and that claims 1-30 were unpatentable as obvious over Harris, FBDIMM Standards, Amidi, and U.S. Patent No. 6,856,556 B1 to Hajeck ("Hajeck").  Ex. 4 at 2, 77, 79.  Because the PTAB invalidated all claims on these three grounds, it did not reach the two additional grounds of unpatentability in the petition.  *Id.* at 77.  Similarly, for the '918 patent, the PTAB concluded that claims 1-3, 8, 14, 15, and 23 were unpatentable as obvious over Harris and FBDIMM Standards; that claims 1-30 were unpatentable as obvious over Harris, FBDIMM Standards, and Amidi; and that claims 1-30 were

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 11**

unpatentable as obvious over Harris, FBDIMM Standards, Amidi, and Hajeck.  Ex. 5 at 2, 89, 90.  As with the challenge to the '054 patent, the PTAB did not reach two additional grounds of unpatentability in the petition because it had found all the claims to be unpatentable in the first three grounds.  *Id.* at 89.

24.     On or about December 8, 2023, promptly after the PTAB issued its unpatentability decisions, Micron asked Netlist to drop its claims on the '054 and '918 patents from the district court case or, at a minimum, stay those claims pending any appeal that Netlist might make.  But Netlist refused to do so.  It insisted on proceeding to a jury trial on these claims in district court, knowing full well that the claims are invalid.

25.     On December 26, 2023, Micron sent another letter to Netlist about its bad faith conduct.  Ex. 8.   The letter noted that, despite the PTAB's determinations of unpatentability, Netlist continued to assert over 40 claims against Micron from these two invalid patents.  *Id*. at 1.  Micron again requested that Netlist dismiss its claims under the '054 and '918 patents or agree to a stay on those patents.  *Id.*.  To date, Netlist has not agreed to do so.

26.     Netlist's assertion of the '054 and '918 patents against Micron has been proven to be meritless and has harmed Micron in Idaho.  Specifically, Netlist has aggressively litigated its claims on the '054 and '918 patents while failing to substantiate them.  For instance, while Netlist knew—as any reasonable person would—that the the '054 and '918 patents were invalid, Netlist opposed a stay pending IPR proceedings and forced Micron to spend significant resources on claim construction, fact discovery, expert discovery, pretrial preparation, and a stay motion.  Meanwhile, Netlist directly interfered with Micron's business in Idaho.  For example, Netlist representatives spent weeks at Micron's facilities, occupying the time of Micron personnel, to

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 12**

inspect Micron documents to support, among other things, its assertion of the '504 and '918 patents. Netlist representatives also conducted depositions of Micron witnesses to further its assertion of these invalid patents. And Netlist directed correspondence to Micron in Idaho demanding payment for Micron products that allegedly infringe these invalid patents. All of this required Micron to invest resources to defend against these invalid claims—distracting Micron management and engineers from the innovative activities that make Micron a leading Idaho employer.

## V.    CLAIM FOR RELIEF

### Bad-Faith Assertions Of Patent Infringement
### (Idaho Code §§ 48-1701 *et seq.*)

27.    Micron incorporates by reference and re-alleges every allegation contained in the preceding paragraphs as though fully set forth herein.

28.    Idaho's Act makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint[,] or any other communication," Idaho Code § 48-1703(1), and allows a target of such bad faith conduct to "bring an action in district court" to seek relief, *id.* § 48-1706(1). "Each bad faith assertion of patent infringement constitutes a separate violation," *id.* § 48-1706(3), including escalations made with regard to an assertion made previously, *see Katana*, 2023 WL 3231201, at *10 ("[I]n commencing patent litigation against a target, a person may commit a separate violation at each step or escalation of the process, rather than committing one extended violation that begins with the demand letter … no matter what escalatory tactics are employed in between.").

29.    From filing suit against Micron after it received detailed IPR petitions which demonstrated that the '054 and '918 patents are invalid, to insisting on trying claims of the '054

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 13**

and '918 patents after the PTAB invalidated them, Netlist's course of conduct has smacked of bad faith. Direct and circumstantial evidence shows that Netlist knew and should have known that its assertion of patent infringement against Micron was unreasonable.

30. For example, an important factor under the Act is that "[t]he person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless." Idaho Code § 48-1703(2)(f). Here, Netlist was acting in subjective bad faith—and there can be no doubt that "a reasonable actor in [Netlist's] position would know or reasonably should know that [the lawsuit] is meritless"—because it ignored the extensive evidence of invalidity in the IPR petitions when it filed suit against Micron, and because it insisted on proceeding to trial against Micron on the '054 and '918 patents *after* the PTAB held that they were obvious on multiple grounds.

31. At every turn, Netlist failed to "engage[] in a good faith." *Id.* § 48-1703(3)(a). Netlist refused to stay its claims after the PTAB instituted IPR proceedings on the '054 and '918 patents. Later, Netlist again refused to dismiss or stay its claims after the PTAB found them to be unpatentable. This knowing assertion of invalid patents is quintessential bad faith conduct.

32. The bad faith assertion of the '054 patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

33. The bad faith assertion of the '918 patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 14**

## VI.     ATTORNEYS' FEES

34.     As a result of the conduct by Netlist as enumerated herein, Micron has been required to retain the services of counsel to assist Micron in pursuing the prosecution of its Complaint against Netlist.  Micron is entitled to recover its attorneys' fees in the pursuit of this litigation pursuant to Idaho Code § 48-1706(1)(c), Idaho Rule of Civil Procedure 54, and such further and additional provisions of the Idaho Rules of Civil Procedure and Idaho Code that may be applicable.  A reasonable attorneys' fee in the event judgment is entered against Netlist after the entry of default is $15,000.00 and an additional amount if this Complaint is answered or otherwise defended.

## VII.     REQUEST FOR A JURY TRIAL

35.     Micron requests a jury trial of all issues in this action that are so triable.

## VIII.   PRAYER FOR RELIEF

36.     Micron respectfully requests that this Court grant the following relief:

(a)     A declaration that Netlist has made a bad-faith assertion of infringement of the '054 and '918 patents against Micron in violation of Idaho Code § 48-1703 and thus engaged in an unlawful, unfair, and deceptive act or practice in trade or commerce under the Idaho Consumer Protection Act.

(b)     An award of damages, both compensatory and exemplary, pursuant to Idaho Code § 48-1706(b) and (d) and any other applicable authority.

(c)     An award of costs and fees, including reasonable attorney fees associated with this litigation, pursuant to Idaho Code § 48-1706(c), Idaho Rule of Civil Procedure 54, and any other applicable authority.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 15**

(d)     Any other relief that the Court deems just and proper.


DATED:  January 16, 2024

HOLLAND & HART LLP


By:*/s/ Teague I. Donahey*
Teague I. Donahey
Christopher C. McCurdy

Jared Bobrow, (*pro hac vice forthcoming*)
Jason Lang, (*pro hac vice forthcoming*)
ORRICK, HERRINGTON & SUTCLIFFE LLP

Attorneys for Plaintiffs Micron Technology, Inc., and Micron Semiconductor, Inc.


31197687_v1

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 16**

# EXHIBIT 4

Electronically Filed
6/2/2025 2:48 PM
Fourth Judicial District, Ada County
Trent Tripple, Clerk of the Court
By: Breanna Johnson, Deputy Clerk

Teague I. Donahey (ISB #9963)
tidonahey@hollandhart.com
Christopher C. McCurdy (ISB #8552)
ccmccurdy@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  (208) 342-5000

Jared Bobrow (*pro hac vice* application forthcoming)
Jason Lang (*pro hac vice* application forthcoming)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:  (650) 614-7405
Email:        jbobrow@orrick.com
                jlang@orrick.com

Wesley L. White (*pro hac vice* application forthcoming)
Kim B. Goldberg (*pro hac vice* application forthcoming)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:  (212) 506-5203
Email:        wwhite@orrick.com
                kgoldberg@orrick.com

Attorneys for Plaintiffs Micron Technology, Inc. and
Micron Semiconductor Products, Inc.

### IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

### STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., a Delaware corporation; and MICRON SEMICONDUCTOR PRODUCTS, INC., an Idaho corporation,<br><br>     Plaintiffs,<br><br>vs.<br><br>NETLIST, INC., a Delaware corporation,<br><br>     Defendant. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT)**<br><br>**JURY TRIAL DEMANDED**<br><br>**(Part 1 of 2 - Exhibits 1-22)** |

Plaintiffs Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively, "Micron"), through their counsel, Holland & Hart LLP and Orrick, Herrington & Sutcliffe LLP, bring this Complaint against Defendant Netlist, Inc. ("Netlist"), alleging as follows:

## I.   INTRODUCTION

1.   Micron brings this action under the Idaho Bad Faith Assertions of Patent Infringement Act (Idaho Code, tit. 48, ch. 17) ("the Act").  The Act, promulgated under Idaho's historic police powers, codifies the state's strong public policy against bad-faith assertions of patent infringement.  The Act recognizes that "abusive patent litigation, and especially the assertion of bad faith infringement claims, can harm Idaho companies" and "undermine Idaho's efforts to attract and nurture" local technology and knowledge-based companies, which can "harm[] Idaho's economy."  Idaho Code § 48-1701(1)(d)-(e).  Accordingly, to "protect Idaho businesses" and to "build Idaho's economy," *id.* § 48-1701(2), the Act makes it "unlawful for a person to make a bad faith assertion of patent infringement," *id.* § 48-1703(1), and declares "[a]ny violation" to be "an unlawful, unfair[,] and deceptive act or practice in trade or commerce." *Id.* § 48-1703(4).  To further disincentivize such conduct, the Act provides victims with the means to fight back, furnishing them with a private cause of action authorizing the award of equitable relief, compensatory damages, exemplary damages, and costs and fees. *Id.* § 48-1706.

2.   Micron is exactly the type of company that the Act is designed to protect.  Micron is Idaho's most successful technology business and largest for-profit employer.  Micron began in 1978 as a four-person semiconductor-design company in the basement of a Boise dental office.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 1**

Since then, Micron has become a world leader in innovative computer-memory and data-storage solutions, employing more than 6,000 people in Idaho.  As Micron has grown into a global semiconductor innovator, Boise has remained its home, serving as the location of Micron's headquarters and principal research and development center.  Indeed, Micron began construction on a new 600,000 square-foot semiconductor fabrication plant in Boise in October 2023, part of a $15 billion investment in developing leading-edge memory manufacturing in Boise that is expected to create over 17,000 new jobs.  But Micron's success has come with a price: fending off baseless assertions of patent infringement by patent enforcement entities.  These patent holders attempt to shake down Micron for license fees and, if Micron refuses, attempt to strong-arm compliance by forcing Micron to spend millions of dollars defending itself in necessarily complex and protracted patent litigation.

3. One such entity that Micron has had to fend off is Defendant Netlist.  Unable to compete with innovators in the marketplace, Netlist's "business" has become bringing patent infringement suits, apparently to drive up litigation costs and pressure the true innovators, such as Micron, to pay what amounts to a business tax, *i.e.*, pay Netlist to settle meritless suits to avoid the distraction and expense of litigation.  True to that mission, Netlist targeted Micron by alleging infringement of facially invalid patents.  Idaho's statute unambiguously characterizes this type of conduct as bad-faith patent assertion.

4. On June 10, 2022, Netlist sued Micron in the United States District Court for the Eastern District of Texas, alleging infringement of six patents: U.S. Patent Nos. 8,787,060 (the "'060 Patent"), 9,318,160 (the "'160 Patent"), 10,860,506 (the "'506 Patent"), 10,949,339 (the "'339 Patent"), 11,016,918 (the "'918 Patent"), and 11,232,054 (the "'054 Patent") (the "203

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 2**

Case"). Ex. 1, ¶¶ 66-125.[1]  Netlist sued Micron on the '506 and '339 Patents even though it should have known they were unpatentable, because another company had previously filed detailed and persuasive petitions for *inter partes* review ("IPR") at the U.S. Patent Office Patent Trial and Appeal Board (the "PTAB") challenging the validity of those patents three months earlier, in March 2022.  Exs. 2-3.  The same company went on to file similarly detailed and persuasive challenges to the '060 and '160 Patents two months later, in August 2022.  Exs. 4-5.

5.      The PTAB instituted IPR proceedings on the '506 and '339 Patents in October 2022, and on the '060 and '160 Patents in April 2023, finding a reasonable likelihood that at least one claim in each patent would be invalidated.  In light of those proceedings Micron asked Netlist in May 2023 to stay the district court case pending resolution of the PTAB proceedings, a request it reiterated in its June 2023 reply brief.  Exs. 6-7.  Netlist refused, instead filing both an opposition and a sur-reply to Micron's stay motion in June 2023 and insisting that the parties continue to prepare for trial.

6.      In October 2023, the PTAB issued Final Written Decisions finding all asserted claims of the '506 and '339 Patents obvious on multiple grounds and therefore unpatentable.  Exs. 8-9.  Micron promptly notified the Eastern District of Texas of those determinations and renewed its request that the case be stayed rather than proceeding to trial (then set for January 2024).  Ex. 10.  Three days later, Netlist dropped its claims for infringement of those patents but continued to assert the remaining claims in the 203 Case.  In December 2023, following the PTAB's determination that two other patents involved in the case were unpatentable, Micron

---

[1] Netlist's assertion of the '918 Patent and '054 Patent is the subject of a different action pending between the parties in this court and is not at issue in this action.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 3**

renewed its motion to stay, noting that the PTAB's decisions on the remaining patents—the '060 and '160 Patents—were expected in April 2024.  It requested oral argument—a request Netlist opposed.

7.      In January 2024, the magistrate judge in the Eastern District of Texas suit issued a report and recommendation that the district court deny Micron's motion to stay.  Ex. 11. Micron objected, arguing that the parties and court should not waste resources trying invalid patents to a jury.  Netlist disagreed and continued to demand that the parties proceed to trial.  On January 31, 2024, the court adopted the report and recommendation and denied Micron's stay motion.  Ten days later, though, on February 10, 2024, the district court judge *sua sponte* entered an order staying the suit pending the PTAB's final written decisions on the challenges to the '060 and '160 Patents.  The court noted that a stay was warranted where four of the six asserted patents had already been invalidated by the PTAB and decisions on the remaining two patents were expected by April 2024.  Ex. 12.

8.      Thereafter, in April 2024, the PTAB as expected issued Final Written Decisions finding all asserted claims of the '060 and '160 Patents obvious on multiple grounds and therefore unpatentable.  Exs. 13-14.  Later that month, Netlist sought to lift the stay—a gambit the court rejected.  Instead, it entered an order in June 2024 keeping the stay in place, noting that the original stay reasoning was even stronger given that all asserted claims of all six patents in suit had been invalidated.

9.      Netlist opened an additional front in its litigation campaign against Micron in the Eastern District of Texas on August 1, 2022, this time alleging infringement U.S. Patent No. 7,619,912 (the "'912 Patent") (the "294 Case").  On August 15, 2022, it amended its complaint

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 4**

to further allege infringement of U.S. Patent No. 9,858,215 (the "'215 Patent") and 11,093,417 (the "'417 Patent"). Ex. 15, ¶¶ 38-69. Netlist sued Micron on the '912 Patent even though it should have known it was unpatentable given the detailed and persuasive petition another company had filed with the PTAB nearly six months earlier, in February 2022. Ex. 16. A similarly detailed and persuasive challenge was filed against the '417 Patent in January 2023. Ex. 17. The PTAB instituted IPR proceedings challenging all asserted claims of the '912 Patent in October 2022 and the '417 Patent in August 2023, each time based on its view that at least one claim of each was likely to be shown to be unpatentable. Micron therefore moved in December 2023 to stay the 294 Case pending resolution of the PTAB proceedings. Ex. 18.[2] Netlist opposed that request too. (Netlist had by November 2023 dropped its infringement allegations concerning the '215 Patent.)

10.     In April 2024, the PTAB, as expected from the outset, issued a Final Written Decision finding the sole asserted claim of the '912 Patent obvious on multiple grounds and therefore unpatentable. Ex. 19. Despite the '912 Patent claim being found unpatentable, Netlist opposed Micron's renewed request in April 2024 that Netlist drop the '912 Patent from its district court case, or at least stay proceedings on the '912 and '417 Patents (on which the PTAB's decision was expected in a few months). Ex. 20. Yet again, Netlist refused to pause in its march to trial, even though it had acknowledged to the court in the 203 Case that the odds of getting PTAB decisions overturned on appeal are very low. Instead, apparently in order to put pressure on Micron to settle, Netlist insisted on going to trial on the '912 Patent—which the

---

[2] Micron filed its Motion to Stay while the 294 Case was consolidated with Lead Case No. 2:22-cv-293.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 5**

PTAB had already found unpatentable—and the '417 Patent in May 2024. That decision forced Micron to waste time and resources and incur significant expenses for attorneys and experts to defend against Netlist's baseless patent claims at a federal jury trial. In July 2024, the PTAB, once again as expected from the outset, issued a Final Written Decision finding all claims of the'417 Patent obvious on multiple grounds and therefore unpatentable. Ex. 21. The jury at the '912 and '417 Patent trial in May 2024 was not shown or asked to decide the grounds for invalidity presented to the PTAB, nor was the jury told about the PTAB's April 2024 conclusion that the '912 Patent was unpatentable.

11.     Netlist's conduct is unjustified, both subjectively and objectively. Netlist knew, and any reasonable litigant should have known, that the '506, '339, '060, '160, '912, and '417 Patents were invalid, but persisted in asserting them against Micron even after receiving detailed evidence showing them to be unpatentable and the asserted claims meritless and in some cases even after the PTAB issued final written decisions finding the claims unpatentable. Patent law does not supply a license to make such bad-faith assertions, which the Act renders unlawful under the "well established state power" of "providing 'common-law and statutory remedies against monopolies and unfair business practices.'" *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 388 (2015) (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989)).

12.     For these reasons and those set forth below, Netlist should be held liable for engaging in unfair business practices in contravention of Idaho law.

## II.     PARTIES

13.     Plaintiff Micron Technology, Inc. is a Delaware corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 6**

14.     Plaintiff Micron Semiconductor Products, Inc. is an Idaho corporation with a principal place of business at 8000 South Federal Way, Boise, Idaho 83716.

15.     Defendant Netlist is a Delaware corporation having a principal place of business at 175 Technology Drive, Suite 150, Irvine, California 92618.  Netlist's principal activities are patent-monetization and patent enforcement.

### III.     JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action, pursuant to Idaho Const. Art. V, § 20 and Idaho Code § 1-705.  The amount in controversy in this action exceeds $10,000, exclusive of interest, costs, and attorney's fees.

17.     This Court has personal jurisdiction over Netlist for the purposes of this action, pursuant to Idaho Code § 48-1704 because Netlist engaged in intentional conduct expressly aimed at Micron, an Idaho company, and the harm from that conduct was felt in Idaho.  Netlist filed the baseless 203 and 294 Cases against Micron knowing that the harm from those litigations would be felt in Idaho, where Micron is headquartered.  In addition, Netlist reached into Idaho to transact business with Micron, an Idaho company.  Netlist sent Micron a proposed licensing agreement in June 2022 and met with Micron representatives twice in July 2022 to attempt to reach agreement on licensing terms (including one meeting remotely attended by a Micron employee from Idaho).  Netlist also came to Idaho to conduct inspections of Micron documents in Boise, Idaho for purposes of asserting the invalid '506, '339, '060, '160, '912, and '417 Patents (among others) against Micron.  *See* Idaho Code § 48-1704(1) ("Any person outside this state sending a demand letter to an Idaho person shall be deemed to be transacting business within this state within the meaning of section 5-514(a), Idaho Code, and shall thereby be subject

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 7**

to the jurisdiction of the courts of this state."). Each of the two Micron plaintiffs here is an "Idaho Person" as defined in Idaho Code § 48-602, and each is a "Target" under Idaho Code §§ 48-1702(3)(a)-(b). In addition, this Court has jurisdiction over Netlist for purposes of this action, pursuant to Idaho Code § 5-514, because Netlist has transacted business in Idaho, as defined in Idaho Code § 5-514(a), *e.g.*, by advertising its sales support in Idaho. *See* https://netlist.com/us-international/. Netlist has twice been found subject to personal jurisdiction in this Court for similar conduct against Micron in suits also arising under the same statute. *See* Order Denying Netlist Mot. to Dismiss, *Micron Tech., Inc., et al. v. Netlist Inc.*, Case No. CV01-23-19920 (Dist. Ct. for the 4th Jud. Dist. of the State of Idaho, in and for the County of Ada) (Dec. 5, 2024) (Cawthon, J.); Mem. Dec. & Order on Def.'s Mot. to Dismiss, *Micron Tech., Inc., et al. v. Netlist Inc.*, Case No. CV01-24-01032 (Dist. Ct. for the 4th Jud. Dist. of the State of Idaho, in and for the County of Ada) (Dec. 20, 2024) (Baskin, J.).

18.    Venue is proper in this Court pursuant to Idaho Code § 5-404 because Netlist does not reside in Idaho and Micron designates this Court as the proper county in this Complaint.

## IV.    FACTUAL ALLEGATIONS

### A.    Idaho's Bad Faith Assertions Of Patent Infringement Act

19.    Idaho's legislature passed Idaho's Bad Faith Assertions of Patent Infringement Act (the "Act") to help protect Idaho's creators, consumers, and marketplace from abusive patent-assertion tactics. As the Act explains, "Idaho is striving to build an entrepreneurial and knowledge-based economy. Attracting and nurturing information technology (IT) and other knowledge-based companies are important parts of this effort and will be beneficial to Idaho's future." Idaho Code § 48-1701(1)(a). Bad-faith assertions of patent infringement hinder these

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 8**

goals. *Id.* § 48-1701(1)(d)-(e). "A business that receives a letter or other communication asserting such claims faces the threat of expensive and protracted litigation and may feel that it has no choice but to settle and to pay a licensing fee, even if the claim is meritless," "harm[ing] Idaho companies." *Id.* § 48-1701(1)(d). And "[f]unds used to avoid the threat of bad faith litigation are no longer available to invest, produce new products, expand[,] or hire new workers, thereby harming Idaho's economy" as well. *Id.* § 48-1701(1)(e).

20.      To prevent these harms and to promote the public good, the Act, like similar legislation in over 30 other states, forbids bad-faith assertions of patent infringement as a matter of state unfair-competition law, Idaho Code § 48-1703(1), (4), a "traditional[]" and "well established" area of state authority within the scope of "the historic police powers of the States." *ARC Am.*, 490 U.S. at 101 (internal quotation marks omitted); *Oneok,* 575 U.S. at 388 (same). Under this authority, states may "make reasonable regulations . . . calculated to protect [their] citizens" from "evil," regardless of whether those regulations touch upon patent rights. *Allen v. Riley*, 203 U.S. 347, 355-58 (1906) (state statute requiring proof of patent ownership in certain transactions permissible). As such, although "state unfair competition claims" may depend on "substantial question[s] of federal patent law," "state unfair competition law" legitimately "regulates conduct in a different field from federal patent law." *Hunter Douglas, Inc. v. Harmonic Design*, 153 F.3d 1318, 1333-34 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (en banc in relevant part); *see Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989) ("[T]he law of unfair competition . . . ha[s] coexisted harmoniously with federal patent protection for almost 200 years."); *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368,

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 9**

1373 (Fed. Cir. 1994) ("Unfair competition law and patent law have long existed as distinct and independent bodies of law, each with different origins and each protecting different rights.").

21.     The Act is wholly consistent with federal patent law and respects the boundaries of the federal patent system. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974); *accord Hunter Douglas*, 153 F.3d at 1334-35 ("The only limitation on the States . . . in regulating the area of patents" is that state legislation "not conflict with the operation of the laws in this area passed by Congress." The Act acknowledges that "[p]atents are essential to encouraging innovation"; that "the protections afforded by the federal patent system create an incentive to invest in research and innovation"; and that "[p]atent holders have every right to enforce their patents when they are valid and infringed, to solicit interest from prospective licensees[,] and to initiate patent enforcement litigation as necessary to protect intellectual property." Idaho Code § 48-1701(1)(b). The Act likewise emphasizes that it is not intended to "interfere with the good faith enforcement of patents or good faith patent litigation." *Id.* § 48-1701(c). Rather, the Act is "narrowly focused," seeking to "facilitate the efficient and prompt resolution of patent infringement claims, protect Idaho businesses from abusive and bad faith assertions of patent infringement[,] and build Idaho's economy" without impinging upon "legitimate patent enforcement actions." *Id.* § 48-1701(2). Therefore, the Act makes unlawful only "bad faith assertion[s] of patent infringement," *id.* § 48-1703(1), setting forth a set of nonexclusive factors, including factors that go to both objective and subjective reasonableness to inform whether a patent holder's conduct crosses the line, *id.* § 48-1703(2)-(3).

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 10**

22.     In non-exclusive fashion, the Act provides factors that "[a] court may consider . . . as evidence that a person *has* made a bad faith assertion of patent infringement," which include:

(d) The demand letter demands payment of a license fee or response within an unreasonably short period of time.

(e) The person offers to license the patent for an amount that is not reasonably based on the value of a license to the patent.

(f)  The person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless.

(g) The claim or assertion of patent infringement is deceptive.

(h)  The person or its subsidiaries or affiliates have previously filed or threatened to file one (1) or more lawsuits alleging patent infringement based on the same or similar claim, the person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless.

Idaho Code § 48-1703(2) (emphasis added).

23.     Because the Act creates liability only for bad-faith assertions of patent infringement, the Act, like "the law of unfair competition" generally, "coexists harmoniously with federal patent protection." *Bonito Boats*, 489 U.S. at 166.  Patent law does not countenance assertions made in bad faith, so states may outlaw such conduct under their "authority to protect businesses and regulate unfair competition" (as more than 30 of them have).  *Katana Silicon Techs. LLC v. Micron Tech., Inc.*, No. 1:22-cv-00273-DCN, 2023 WL 3231201, at *4 (D. Idaho May 3, 2023); *see, e.g., Hunter Douglas*, 153 F.3d at 1336-37 (permitting liability for "state law torts" premised on "bad faith enforcement of a patent").

24.     The U.S. District Court for the District of Idaho has held that "the Act is not preempted by federal law," explaining that the Act "plays in close harmony with" and "strikes a

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 11**

similar balance" as federal patent law, as both "have the end goal of protecting valid patents" and patent assertions "without enabling bad-faith or vexatious litigation." *Katana*, 2023 WL 3231201, at *5, 7, 12; *cf. id.* at *8 (noting that "courts asked to review . . . state acts" like the Idaho Act "have upheld their constitutionality" (collecting cases)); *see also Micron Tech., Inc. v. Netlist, Inc.*, 744 F. Supp. 3d 1115 (D. Idaho Aug. 13, 2024) (remanding case to state court); *Micron Tech., Inc. v. Netlist, Inc.*, No. 1:24-cv-00081-DCN, 2024 WL 3794139 (D. Idaho Aug. 13, 2024) (same).  For example, the Patent Act disapproves of baseless assertions in its fee-shifting provision, 35 U.S.C. § 285, which permits fee awards in cases "presenting either subjective bad faith or exceptionally meritless claims." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014).  Idaho's Act "has the same essential purpose[]" in creating further consequences for patentees when they wrongly pursue claims. *Katana*, 2023 WL 3231201, at *7; *cf. Bonito Boats*, 489 U.S. at 166 (approving unfair-competition law in part because "Congress has . . . given federal recognition to many of the concerns that underlie the state tort of unfair competition").  And the creation of additional consequences is Idaho's prerogative. *Katana*, 2023 WL 3231201, at *8.  "'Ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law.'" *English v. Gen. Elec. Co.*, 496 U.S. 72, 89 (1990) (quoting *Arc America*, 490 U.S. at 105).

25.    The remedies provided by the Idaho Act are not duplicative of those provided by federal law, such as 35 U.S.C. § 285.  Rather, Idaho Code §  48-1706(2) provides that "[t]he remedies provided for in this chapter are not exclusive and shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other statute."

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 12**

**B. Netlist's Bad-Faith Assertions Against Micron**

26. On June 10, 2022, Netlist filed a complaint against Micron in the U.S. District Court for the Eastern District of Texas. Ex. 1. Netlist alleged, among other things, that Micron infringed six patents: the '506, '339, '060, and '160 Patents, as well as two other patents (the '054 and '918 Patents, which are not at issue here but instead are subject to a different litigation between Micron and Netlist). *Id.* ¶¶ 66-125.

27. Netlist's claims that Micron infringed the '506 and '339 Patents and its repeated decisions to continue to litigate those claims were in bad faith. More than two months before it filed its complaint in the 203 Case, Netlist had received extensive documentation showing clearly and persuasively that those two patents are invalid as obvious under 35 U.S.C. § 103. Specifically, on March 2, 2022, Samsung Electronics Co., Ltd. ("Samsung") filed petitions at the PTAB challenging the validity of all claims of the '339 Patent and the '506 Patent. The petitions, which were supported with expert testimony and extensive prior art, demonstrated that the claims of those patents were obvious (and therefore unpatentable) under 35 U.S.C. § 103 on multiple grounds. Exs. 2-3. The '506 petition was 128 pages in length, described five relevant prior art references, and set forth six different grounds that rendered the challenged claims unpatentable. Ex. 2 at 1-2, 11-20. The '506 petition was further supported by a detailed, 258-page declaration from Samsung's expert, Dr. Robert Wedig. Ex. 22. The '339 petition was 152 pages in length, and described two relevant prior art references that rendered the challenged claims unpatentable. Ex. 3 at 1-2, 11-13. The '339 petition was further supported by a detailed, 495-page declaration from Samsung's expert, Dr. Vivek Subramanian. Ex. 23. Ignoring this detailed evidence of invalidity, Netlist forged ahead and filed suit against Micron. Given the

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 13**

strength of these IPR petitions, Netlist knew, or reasonably should have known, that its assertion of the '506 and '339 Patents was meritless, and the patents valueless, given the unpatentability of the asserted claims.

28.     Netlist also alleged in its June 10, 2022 complaint in the 203 Case that Micron infringed the '060 and '160 Patents.  Ex. 1, ¶¶ 110-125.

29.     But just two months after it filed its complaint, Netlist received extensive documentation showing clearly and persuasively that the '060 and '160 Patents are also invalid as obvious under 35 U.S.C. § 103.  Specifically, on August 26, 2022, Samsung filed petitions at the PTAB challenging the validity of all claims of the '060 and '160 Patents.  The petitions, which were supported with expert testimony and extensive prior art, demonstrated that the claims of those patents were obvious under 35 U.S.C. § 103 on multiple grounds.  Exs. 4-5.  The '060 petition was 145 pages in length, described five relevant prior art references, and set forth five different grounds that rendered the challenged claims unpatentable.  Ex. 4 at 3, 15-21.  The '060 petition was further supported by a detailed, 435-page declaration from Samsung's expert, Dr. Andrew Wolfe.  Ex. 24.  The '160 petition was 129 pages in length, described five relevant prior art references, and set forth two different grounds that rendered the challenged claims unpatentable.  Ex. 5 at 3, 17-23.  The '160 petition was further supported by a detailed, 339-page declaration from Samsung's expert, Dr. Andrew Wolfe.  Ex. 25.  Given the strength of these IPR petitions, Netlist knew, or reasonably should have known, that its assertion of the '060 and '160 Patents was meritless, and the patents valueless, given the unpatentability of the asserted claims. But Netlist pressed ahead with the litigation anyway.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 14**

30.     Unsurprisingly, the PTAB instituted IPR proceedings on Samsung's four petitions on October 19, 2022 (Ex. 26), October 21, 2022 (Ex. 27), and April 12, 2023 (Exs. 28-29). The PTAB's institution decisions in each IPR rejected the arguments Netlist raised in its Preliminary Responses filed in opposition to Samsung's petitions for review. The PTAB instead found that Samsung had established "a reasonable likelihood" that it would prevail in showing that at least one challenged claim of each of the four asserted patents was unpatentable. Ex. 26 at 37; Ex. 27 at 2, 34; Ex. 28 at 2, 27; Ex. 29 at 2, 28. Netlist again decided to continue asserting the patents in the Texas federal court notwithstanding the PTAB's conclusions.

31.     In light of the PTAB's decisions to institute IPR proceedings challenging the validity of the '506, '339, '060, and '160 Patents, Micron sought to pause the infringement litigation pending the outcome of the IPR proceedings. On May 19, 2023, Micron filed a motion to stay, pointing out that the case was at an early stage and that a stay would significantly reduce costs for both sides. It argued that IPR proceedings were designed to streamline litigation and that the IPRs could resolve the entirety of the 203 Case. Netlist opposed the motion to stay on June 6, 2023. Micron filed a reply on June 12, 2023, reiterating that a stay would conserve resources and avoid a substantial amount of work. Netlist filed a sur-reply further opposing the motion to stay on June 20, 2023. As a result of Netlist's refusal and insistence on continuing to litigate, Micron was forced to proceed with costly and time-intensive patent litigation in federal court, including fact discovery, motion practice, depositions, claim construction proceedings, and expert discovery.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 15**

32.     On October 17, 2023 (Ex. 8), and October 18, 2023 (Ex. 9), the PTAB, as predicted, issued Final Written Decisions finding all claims of the '506 and '339 Patents unpatentable.  Ex. 8 at 2, 32-33; Ex. 9 at 2, 64-65.

33.     Specifically, for the '506 patent, the PTAB concluded that claims 1, 2, 4, 6, 7, 11, 13-15, 17, and 18 were unpatentable as obvious over U.S. Patent Pub. No. 2010/0312956 A1 to Hiraishi ("Hiraishi") and U.S. Patent Pub. No. 2007/0008791 A1 to Butt ("Butt"); that claims 3, 5, 12, and 16 were unpatentable as obvious over Hiraishi, Butt, and U.S. Patent Pub. No. 2006/0277355 A1 to Ellsberry ("Ellsberry"); and that claims 8-10, 19, 20 were unpatentable as obvious over Hiraishi, Butt, and U.S. Patent No. 6,184,701 B1 to Kim ("Kim").  Ex. 8 at 2, 32-33.  Because the PTAB invalidated all claims of the '506 Patent on these three grounds, it did not reach the three additional grounds of unpatentability set forth in the '506 Patent IPR petition. *Id.* at 30, 32 n.12.

34.     As to the '339 Patent, the PTAB concluded that claims 1-35 were unpatentable as obvious over Ellsberry and U.S. Patent No. 7,024,518 B2 to Halbert ("Halbert").  Ex. 9 at 2, 64-65.

35.     Micron promptly informed the Eastern District of Texas of these decisions in an October 20, 2023 notice.  Micron argued that the decisions weighed in favor of granting its May 2023 motion to stay and renewed its request that the action be stayed to conserve judicial and party resources.

36.     On October 23, 2023, Netlist informed the court that it was no longer pursuing claims for infringement of the '506 or '339 Patents.  It continued to assert the remaining claims in the 203 Case.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 16**

37.     After the PTAB found all asserted claims of the '918 and '054 Patents unpatentable in December 2023, Micron filed a supplement to its motion to stay on December 8, 2023.  It explained that proceeding to trial would require substantial resources, whose expenditure could be avoided with a stay.  It sought oral argument on the motion in a separate December 14, 2023 filing, which Netlist opposed.  Micron thereafter reiterated that the motion to stay would conserve party resources and avoid the costs of trial.

38.     On January 3, 2024, the magistrate judge in the 203 Case issued a report and recommendation recommending that the court deny Micron's motion to stay.  Micron filed an objection to that report and recommendation on January 5, 2024, explaining that it had repeatedly asked Netlist to drop the invalid patents, but Netlist had refused.  It argued that, in the absence of a stay, both Micron and Netlist would present additional experts and witnesses on the invalid patents, adding unnecessary complexity and wasting party and judicial resources.  Netlist again opposed, in a January 19, 2024 filing.  On January 31, 2024, the Eastern District of Texas adopted the report and recommendation and denied Micron's motion to stay.  Here again, Netlist opted to continue asserting the patents.

39.     On February 10, 2024, the court *sua sponte* stayed the 203 Case pending the PTAB's written decisions on the '060 and '160 Patent IPRs.  It stated that trying the case before the PTAB's decisions "risks an inefficient consumption of limited judicial resources that makes imposing a targeted stay, until that ruling is received, advisable."  It therefore stayed the case pending the PTAB's written decisions or further order.

40.     As (again) expected, on April 1, 2024 the PTAB found all asserted claims of the '060 and '160 Patents to be unpatentable. Exs. 13-14.  With respect to the '060 patent, the

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 17**

PTAB concluded that claims 1-6, 8-14, 16-19, and 29-34 were unpatentable as obvious over U.S. Patent Pub. No. US 2011/0103156 A1 to Kim ("Kim") and U.S. Patent No. 8,041,881 A1 to Rajan ("Rajan"); that claims 1-14, 16-19, and 29-34 were unpatentable as obvious over Kim, Rajan, and U.S. Patent Pub. No. 2011/0026293 A1 to Riho ("Riho"); and that claims 1-6 and 8-34 were unpatentable as obvious over Kim, Rajan, and U.S. Patent No. 7,969,192 B2 to Wyman ("Wyman"). Ex. 13 at 2, 73-74. As with the challenge to the '506 Patent, the PTAB did not reach two additional grounds of unpatentability included in the '060 petition because it had found all the claims to be unpatentable on these three grounds. *Id.* at 72-73, 74 n.15.

41. As to the '160 patent, the PTAB concluded that claims 1-20 were unpatentable as obvious over U.S. Patent Pub. No. US 2011/0103156 A1 to Kim ("Kim"), Rajan, and Wyman. Ex. 14 at 2, 67-68. As with the challenge to the '506 and '060 Patents, the PTAB did not reach an additional ground of unpatentability explained in the '160 petition because it had found all the claims to be unpatentable on the combination of Kim, Rajan, and Wyman. *Id.* at 66, 67 n.15.

42. The parties filed a joint notice regarding the stay of the 203 Case on April 12, 2024. Micron explained that all of the asserted patent claims had been found invalid and that trying invalid patents would require substantial, and likely unnecessary, expenses and resources. Netlist, however, asked the court to lift the stay so that Netlist could pursue its infringement case. Netlist's ongoing push to litigate infringement of invalid claims was, upon information and belief, an attempt to continue to pressure Micron to settle. On June 13, 2024, the court rejected Netlist's request to lift the stay, finding that its original reasoning to stay the case "now holds

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 18**

additional weight given that all asserted claims of all six patents in suit have been invalidated."

43.        Netlist has never taken any steps to dismiss any part of the 203 Case.

44.        Netlist took a similarly bad-faith approach to its assertions against Micron in the 294 Case.

45.        On August 1, 2022, Netlist sued Micron in the Eastern District of Texas, alleging infringement of the '912 Patent.  Ex. 30, ¶¶ 38-42.

46.        But Netlist should never have asserted the '912 Patent in the first place.  Nearly six months before it filed its complaint in the 294 Case, Netlist received extensive documentation showing clearly and persuasively that the asserted claim of that patent is invalid as obvious under 35 U.S.C. § 103.  Specifically, on February 17, 2022, Samsung filed an IPR petition at the PTAB challenging the validity of claim 16 of the '912 Patent.  The petition, which was supported with expert testimony and extensive prior art, demonstrated that claim 16 of that patent was obvious under 35 U.S.C. § 103 on multiple grounds.  Ex. 16.  The '912 petition was 117 pages in length, described three relevant prior art references, and set forth three different grounds that rendered the challenged claim unpatentable.  *Id.* at 4, 14-22.  The '912 petition was further supported by a detailed, 193-page declaration from Samsung's expert, Dr. Andrew Wolfe.  Ex. 31.  Ignoring this detailed evidence of invalidity, Netlist proceeded to sue Micron.  Given the strength of this IPR petition, Netlist knew, or reasonably should have known, that its assertion of the '912 Patent was meritless, and the patent valueless, given the unpatentability of the asserted claim.  Netlist asserted the patent anyway.

47.        Netlist amended its complaint in the 294 Case on August 15, 2022 to allege infringement of the '417 and '215 Patents as well.  Ex. 15, ¶¶ 40-66.

COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH
ASSERTION OF PATENT INFRINGEMENT) - 19

48.     On October 19, 2022, the PTAB instituted IPR proceedings on the '912 petition. Ex. 32.  The PTAB's institution decision rejected the arguments Netlist raised in its Preliminary Responses opposing Samsung's petition and found that Samsung had established "a reasonable likelihood" that at least one challenged claim would be shown to be unpatentable.  *Id*. at 59. Netlist decided again to continue asserting the patent in Texas federal court.

49.     Soon thereafter, Netlist received extensive documentation showing clearly and persuasively that the'417 Patent was also invalid as obvious under 35 U.S.C. § 103.  Specifically, on January 10, 2023, Samsung filed a petition at the PTAB challenging the validity of all claims of the'417 Patent.  The petition, which was supported with expert testimony and extensive prior art, demonstrated that the claims of that patent were obvious under 35 U.S.C. § 103 on multiple grounds.  Ex. 17.  The '417 petition was 128 pages in length, described four relevant prior art references, and set forth three different grounds that rendered the challenged claims unpatentable.  *Id.* at 5, 15-25.  The '417 petition was further supported by a detailed, 340-page declaration from Samsung's expert, Dr. Andrew Wolfe.  Ex. 33.  Given the strength of that IPR petition, Netlist knew, or reasonably should have known, that its assertion of the '417 Patent was meritless, and the patent valueless, given the unpatentability of its claims.  Netlist pressed ahead with its suit anyway.

50.     The PTAB instituted IPR proceedings on this petition on August 1, 2023. Ex. 34.  The PTAB's decision instituting IPR proceedings rejected the arguments Netlist raised in its Preliminary Response to Samsung's petition and found that Samsung had established "a reasonable likelihood" that at least one challenged claim would be shown to be unpatentable.  *Id.* at 2, 41.  Notwithstanding that decision, Netlist opted to continue asserting the patent.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 20**

51.      On December 19, 2023, Micron filed a motion to stay the 294 Case pending the outcome of the IPR proceedings on the '417 and '912 Patents, arguing that a stay would simplify the case and potentially eliminate the need to try infringement.  Ex. 18.  Netlist refused this request, filing an opposition to the stay motion on January 9, 2024, and insisting that the parties proceed to trial on the invalid patents with all of the attendant costs of discovery, motion practice, expert work, and trial preparation.[3]

52.      On March 12, 2024, the court denied the motion to stay.

53.      On April 17, 2024, as expected, the PTAB issued a Final Written Decision finding the sole asserted claim of the '912 Patent unpatentable as obvious.  Ex. 19 at 5, 53-55. Specifically, the PTAB concluded that claim 16 was unpatentable as obvious over U.S. Patent Pub. No. 2006/0277355 A1 to Ellsberry ("Ellsberry").  Because the PTAB invalidated all claims of the '912 Patent on this ground, it did not reach the two additional grounds of unpatentability in the '912 petition.  *Id.* at 52.  Netlist continued to assert the patent anyway.

54.      On April 17, 2024, Micron moved to stay the 294 Case in light of the PTAB's conclusion that the asserted claim of the '912 Patent was unpatentable and the expected determination on the '417 Patent IPR in the coming months.  Netlist opposed that motion on April 22, 2024, instead insisting that Micron incur the substantial expense and distraction of proceeding to trial.

---

[3] By November 2023, Netlist had dropped its infringement allegations concerning the '215 Patent, a decision it confirmed in a January 9, 2024 notice to the court narrowing the asserted patents for purposes of trial.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 21**

55.    Trial on the '417 and '912 Patents took place from May 20, 2024 through May 22, 2024.  The jury was not presented with the grounds for invalidity put forward in the IPR proceedings with respect to those patents.

56.    On July 30, 2024, as expected, the PTAB issued a Final Written Decision finding the'417 Patent obvious and therefore unpatentable—including the claims of the '417 Patent tried to the jury in May 2024.  Ex. 21 at 2, 48-49.

57.    Specifically, for the '417 Patent, the PTAB concluded that claims 1-15 were unpatentable as obvious over Perego and JESD79-2.  Ex. 21 at 2, 48.  Because the PTAB invalidated all claims of the '417 Patent on this ground, it did not reach the two additional grounds of unpatentability in the '417 petition.  *Id.* at 48 n.12.

58.    Aside from ceasing its assertion of the '215 Patent, Netlist has never taken steps to dismiss the 294 Case.

59.    Netlist's repeated and insistent assertions of the '506, '339, '060, '160, '912, and '417 Patents in patent litigation against Micron were meritless and have harmed Micron in Idaho.  Specifically, Netlist continued to assert those patents against Micron, refusing Micron's motions to stay or dismiss the cases and in some cases even subjecting Micron to the burden and expense of a jury trial, notwithstanding the many indications that the claims Netlist was asserting were meritless.  Netlist instead forced Micron to spend significant resources on defending itself from Netlist's claims, including in many cases through claim construction, fact discovery, expert discovery, stay motions, pretrial preparation, jury trial, and IPR proceedings before the PTAB.

60.    In addition to its repeated and ongoing bad faith assertions of the '506, '339, '912, '060, '160, and '417 Patents in infringement litigation against Micron, Netlist also asserted

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 22**

them—and sought to obtain royalties for them—from Micron in the context of licensing discussions between the parties.

61.     On June 24, 2022, Netlist wrote to Micron to demand that Micron pay a $6 per-unit royalty for LRDIMM products and engage in licensing discussions.  It offered to send its Vice President of Licensing and its Strategic Licensing Advisor to an in-person meeting with Micron.

62.     Micron and Netlist met virtually to discuss potential licensing terms on July 6, 2022, and again in-person on July 19, 2022.  A Micron representative attended the July 19, 2022 meeting virtually from Idaho.

63.     Netlist also made burdensome demands on Micron in connection with its assertion of the patents asserted in the 203 and 294 Cases.  Netlist representatives came to Micron's Boise headquarters on 34 separate occasions from July 2023 to October 2023 to conduct inspections of Micron's electronic design files for the products accused of infringement in the Texas lawsuits.  These inspections required a substantial amount of involvement from Micron personnel in Idaho, including IT support.  Netlist's litigation demands imposed significant amounts of Micron engineers' time, during which they could not attend to their usual innovative work.

## V.     CLAIM FOR RELIEF

### Bad-Faith Assertions Of Patent Infringement
### (Idaho Code §§ 48-1701 *et seq.*)

64.     Micron incorporates by reference and re-alleges every allegation contained in the preceding paragraphs as though fully set forth herein.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 23**

65.      Idaho's Act makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint[,] or any other communication," Idaho Code § 48-1703(1), and allows a target of such bad faith conduct to "bring an action in district court" to seek relief, *id.* § 48-1706(1).  "Each bad faith assertion of patent infringement constitutes a separate violation," *id.* § 48-1706(3), including escalations made with regard to an assertion made previously, *see Katana*, 2023 WL 3231201, at *10 ("[I]n commencing patent litigation against a target, a person may commit a separate violation at each step or escalation of the process, rather than committing one extended violation that begins with the demand letter . . .  no matter what escalatory tactics are employed in between.").

66.      Netlist filed suit on the '912, '506, and '339 Patents even after having the opportunity to review clear evidence of their invalidity in detailed IPR petitions and even after the PTAB rejected its arguments defending those patents and instituted IPR proceedings.  It refused Micron's entreaties to pause its litigation of the '506 and '339 Patents in May 2023, only to drop those claims five months later once the PTAB (predictably) confirmed that all claims of those patents were unpatentable.  It similarly refused to cease its assertion of the '912 patent even after Micron moved to stay and after the PTAB issued a Final Written Decision finding the sole asserted claim of that patent invalid as obvious—instead subjecting Micron to a trial on the confirmed invalid patent.  Netlist's conduct in not taking any steps to dismiss its litigation concerning the '060, '160, and '417 Patents, even after the PTAB instituted IPR proceedings (because there was a reasonable likelihood at least one claim of each would be found unpatentable), after Micron's motions to stay, and after the PTAB issued decisions of unpatentability, was similarly in bad faith.  *See* Idaho Code § 48-1703(2)(f).  Netlist's knowing

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 24**

assertions of invalid patents are quintessential bad faith conduct. Netlist's aggressive approach towards patent enforcement, and the significance of patent licensing and enforcement to its business, further shows its subjective bad faith in its menacing behavior towards Micron.

67. Netlist further violated the Act by making licensing demands not reasonably based on the value of the patents at issue, including in its June 24, 2022 licensing demand letter and in the parties' ensuing discussions.

68. The bad faith assertion of the '506 Patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

69. The bad faith assertion of the '339 Patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

70. The bad faith assertion of the '060 Patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

71. The bad faith assertion of the '160 Patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

72. The bad faith assertion of the '912 Patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

73. The bad faith assertion of the '417 Patent violates the Act, and Micron is entitled to declaratory and monetary relief as a result.

## VI. ATTORNEYS' FEES

74. As a result of the conduct by Netlist as enumerated herein, Micron has been required to retain the services of counsel to assist Micron in prosecuting its Complaint against Netlist. Micron is entitled to recover its attorneys' fees in the pursuit of this litigation pursuant to

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 25**

Idaho Code § 48-1706(1)(c), Idaho Rule of Civil Procedure 54, and such further and additional provisions of the Idaho Rules of Civil Procedure and Idaho Code as may be applicable. A reasonable attorneys' fee in the event judgment is entered against Netlist after the entry of default is $40,000 and an additional amount if this Complaint is answered or otherwise defended.

## VII.    REQUEST FOR A JURY TRIAL

75.    Micron requests a jury trial of all issues in this action that are so triable.

## VIII.    PRAYER FOR RELIEF

76.    Micron respectfully requests that this Court grant the following relief:

(a)    A declaration that Netlist has violated Idaho Code § 48-1703 in asserting the '506, '339, '060, '160, '912, and '417 Patents against Micron in bad faith and thus engaged in an unlawful, unfair, and deceptive act or practice in trade or commerce under the Idaho Consumer Protection Act.

(b)    An award of damages, both compensatory and exemplary, pursuant to Idaho Code § 48-1706(b) and (d) and any other applicable authority.

(c)    An award of costs and fees, including reasonable attorney fees associated with this litigation, pursuant to Idaho Code § 48-1706(c), Idaho Rule of Civil Procedure 54, and any other applicable authority.

(d)    All other relief that the Court deems just and proper.

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 26**

DATED:  June 2, 2025

HOLLAND & HART LLP


By:/s/Teague I. Donahey
Teague I. Donahey
Christopher C. McCurdy

Jared Bobrow (*pro hac vice* application forthcoming)
Jason Lang (*pro hac vice* application forthcoming)
Wesley L. White (*pro hac vice* application forthcoming)
Kim B. Goldberg (*pro hac vice* application forthcoming)
ORRICK, HERRINGTON & SUTCLIFFE LLP

Attorneys for Plaintiffs Micron Technology, Inc., and
Micron Semiconductor, Inc.


35091349_v1

**COMPLAINT FOR VIOLATION OF IDAHO CODE § 48-1703 (BAD FAITH ASSERTION OF PATENT INFRINGEMENT) - 27**